The last case for the morning is 20-7024 and 20-7025. Osterhout v. Board of County Commissioners. Counsel for appellant, if you would please make your appearance and proceed. Thank you, your honor. James Gibbs on behalf of the appellant, Kendall Morgan. May it please the court. The appellants have respectfully requested to split their time, so I'll do my best to cover as much argument as I can before turning it over to Mr. Carr. As this court's aware, this case involves a trial which returned a verdict against the appellants in this case. The claims were for excessive force during the effectuation of the plaintiff's arrest. The specific claims against Mr. Morgan were for constitutional violations under the 4th and 14th pursuant to 1983. The specific claims against the defendant, Board of County Commissioners, were under the Oklahoma Governmental Tort Claims Act for the negligent use of excessive force. Importantly, I want to point out to the panel, there was no constitutional claim raised against the board. There was no Monell claim. The jury was instructed on a variety of things, which we'll talk about here shortly, and they eventually returned a verdict of $3 million collectively in compensatory damages against both the board and defendant appellant Morgan, and then a $1 million punitive damage award against Mr. Morgan. A remitter was granted upon our request, and the court, the district court, found that the compensatory award was excessive. That's in the orders of the court, and reduced the compensatory award by $1 million. We've got several issues that we've raised on appeal, and I'll do my best to address them all. The first one I would like to talk about with the panel is the issue of misconduct or inappropriate conduct by plaintiff's counsel during the trial. We think this is an important aspect that affected the ultimate judgment or verdict by the jury. As the court's aware, we had briefed this issue that there was a motion in limine filed with the court, specifically addressing an investigation by the OSPI and the FBI into appellant Morgan. The motion in limine was uncontested, and plaintiff's counsel in the underlying case basically stipulated to that. But during trial, we had several instances where this came up. I think both the appellants and the appellees agree that the Wittenberg case is the applicable case that would dictate or the factors that should be employed in determining whether this conduct was appropriate or inappropriate. I think both sides have cited it in their briefs. And the Wittenberg factors include three separate elements, and we believe that the court misapplied or failed to recognize that all three of these elements were satisfied. The first element is basically the extent of the improper comments or whether they were repeated. We have cited in the record numerous occasions where plaintiff's made reference to this investigation of appellant Morgan. Three separate times that we can note just off the top of our head of which they were sustained. During one of those, I actually moved for a mistrial due to the reference to the investigation. When was that? When did you, I mean, where in the record is that? Yes, your honor, I can tell you. Is this the one where you said, your honor, it's improper and your honor, I think it, I almost think it's grounds for a mistrial at this point. Is that what you're relying on for your motion? It is your honor, and that's a page to be a comment as opposed to an actually asking for affirmative relief. Your honor, and I would agree it was followed up, I think. And so if you read a little further in the record, there's an additional reference. And so I think the court acknowledged and accepted that as a motion for mistrial. And I'm trying to find the specific force, but there's a specific quote, but we did follow up with that, your honor. And I think that the record was clear that the district judge accepted that as a motion for mistrial. It's been acknowledged in the record several different locations. So yes, your honor, Judge Carson, that's exactly right. But immediately after that, the plaintiff's counsel made an additional reference to the same investigation. So we think that we have sufficient occasions to satisfy the first factor under Wittenberg. I think it's also important to note that this was not a lengthy trial. This was approximately three days of evidence in the trial. And the number of witnesses was also relatively limited. So the impact of these improper statements carried more weight than what might be the case in a trial with more witnesses. The second factor under Wittenberg is whether the court took curative action. And as noted that the judge did not specifically, and I've quoted it, I think, in the briefs, I made the comment that the bell had been rung and couldn't be unrung. And Judge White agreed with that and took no other curative action. Well, what would you have wanted him to do in light of you telling him that the bell had been rung and couldn't be undone? I mean, you asked for mistrial, he said no. Was there any other curative action that you asked for proposed? You ask him to give a limiting instruction, ask him to disregard the testimony? Did not, Your Honor, because obviously the fear in trial is that you're drawing further emphasis to that particular statement. So we'd move to the mistrial. That's strategic. Yes, Your Honor. I mean, you're faulting him for not taking action, but it was your decision not to ask for action. We did ask for action, Your Honor, respectively in requesting the mistrial, which was denied. So the only relief, in your opinion, that could have worked would be a complete mistrial. Yes, Your Honor, we believe so. So we don't think curative action was taken. And then with respect to the third factor, you look to the apportionment of liability or the size of the damage award. And in this instance, we know that the court in and of itself found the compensatory award to be excessive and reduced it from $3 million to $2 million. So we feel that the factors of Wittenberg were satisfied and that in this instance, the conduct of plaintiff's counsel was inappropriate. Not to jump ahead, and I certainly won't answer any other questions of the panel, but I wanted to briefly address the verdict form before Mr. Carr takes over. In this instance, the court submitted a verdict form with a single line for compensatory damages. We feel this was inappropriate and contrary to the law. As I mentioned in my opening, this case involved a constitutional claim against defendant or appellant Morgan and a state claim against the each defendant. That was not done. We had requested that specific instruction, and we believe the reason that's important is that, as this court knows, that there are different standards of proof with respect to a state claim and a constitutional claim. And the way the case was tried and the way it was pled, Mr. Morgan could not be held liable for any state claim and the county could not be held liable for any constitutional claim because of the manner in which the allegations were made. We think that this required the court to set out two separate entries for the damage award, and I think this is even further demonstrated, and it's mentioned I believe in the record, by a jury question that was submitted by the jury during their deliberations. They specifically asked for clarification of who was responsible for paying compensatory damages and who was responsible for paying the punitive damages. To us, this demonstrates the confusion and the error in doing this because what has happened is now the judge, upon his own action, reduced the $2 million award against the defendant's board and held them accountable for the statutory cap of $125,000. Let me just tease it out for a quick second here. I understood the thrust of your argument to be, in fact, because there were separate claims and separate standards of proof associated with the two claims, one against Mr. Morgan and one against the county, it was all the more important that there be a separate line. Did I understand that correctly? Yes, Your Honor. Okay. Well, wouldn't there have been clarity based upon the very form as it existed by the fact that the court did set out the nature of the claims that the defendants faced and whether there was a wouldn't the jury have had in its frame of reference that, in fact, there were separate claims as to which there had to be a finding of liability and whatever additional instructions they had relative to those claims. In other words, I'm not sure I understand why there would have been confusion interjected by the existence of only one line in this verdict. Yes, Your Honor, and we think that the confusion lies in the fact that there's still, because there was a state tort claim and a constitutional claim, there still had to be a finding of how much harm was caused by Mr. Morgan's actions under the constitutional allegation versus how much harm was caused by the claims asserted against the board. And the only way this could be done is by separate awards on the verdict form. Are the injuries, are plaintiff's injuries divisible? Your Honor, I don't know if the injuries are divisible, but the causes of action are, and as I've mentioned, and they require two different standards of proof. I don't disagree with that, but doesn't it matter that the, so I think I hear you saying that you would agree that they're indivisible, the injury. Yes, Your Honor, I think the injury is indivisible. So isn't that what matters for the ultimate compensability of the case? I mean, the compensation award's based on the injury, and if it's indivisible, you only need one line. Possibly, Your Honor, under some circumstances, but in this particular occasion, we know that with two defendants, and we know with a statutory cap for the board, that the court then just assessed the 125 cap against the board and assessed the bulk of it where we don't really know if that was the jury's intentions, and in fact, we know that they were questioning it on their jury note, and it appears that they were assessing compensatory against the board and perhaps the punitive against Mr. Morgan, so the only way to potentially resolve that would be to specify the damages against each, and I've gone way over time, and I don't mean to cut anybody off. I'm happy to answer your other questions, or I will let Mr. Carr address his questions. You're on mute, Mr. Carr. Thank you, and I'll just briefly add to that, Your Honors, that with regard to the issue of the verdict form or the way the jury instructions were presented to the jury, there were separate claims with regard to a constitutional claim that required a showing of intentional act or deliberate willful, wanton actions on behalf of the plaintiff. The evidence cited in the brief was replete with, if you believe, the plaintiff's version of the evidence, which the jury apparently did, and let's just assume that that's the evidence, that he steps off his motorcycle, he turns around calmly, he puts his hands up, and then he is just cold-clocked in the face with either a flashlight or a fist that he has taken to ground that he has handcuffed and then kicked, and that while he's kicking him, he's yelling, you know, all these, I think, on page 29 of the brief. I won't read them because it's replete with a lot of curse words, but, you know, get out of my town, hippie, don't ever come back, and calling him all sorts of things. The evidence that the jury heard is replete with evidence that Morgan acted in a manner that was malicious and intentional, and what we have here is, again, we don't have a Bonnell claim against the county. It's a state claim which requires a showing that he be within the scope of his employment. Well, why wouldn't it be reckless disregard? I mean, why would that not establish a basis for him being within the scope of his employment in this case? Because in order to show that he is within the scope of his employment under the definition as we see it, they have to show that he is acting in good faith. That term is used in the statute, which is cited, I think, on page 22, or I'm sorry, 29 and 30 of the brief, but he has to be acting in good faith. And what I'm asking you is why doesn't, why couldn't you be acting in reckless disregard of rights and still be within the scope of good faith, and therefore within the scope of employment, as opposed to malicious conduct? Again, the way, again, it's not reckless disregard. I mean, this evidence shows that he was acting in an intentional manner in what you argue this in a rule 50 motion? We did. Yes, at the closing. The board did? Yes, we did. I did. I argued it. I, after the close of the plaintiff's evidence and after the close of ours, we argued this and he, I think he had a question similar to Judge Holmes, Judge White did, asking about how he could still be within the scope of his employment, but maybe lost his temper or something of that getting out of hand when he's, when he's handling somebody. This is saying that he is dragging him down, hitting with a flashlight, kicking him after he's handcuffed, yelling at him, cursing at him. When he shuts the, when the EMT shuts the door to the ambulance, he says, hey, don't give her any stuff or you'll get some more of that when I get to the hospital. So your premise is that the evidence as found would only establish malice or lack of good faith and would not be support a reckless disregard determination. Yes. Okay. And that, and so, because, and again, I think the jury instructions were confusing because they had all these instructions with regard to the use of force and the fourth, um, you know, amendment issues, which required a showing of intentional conduct or malice, or even using the term bad faith. But then they also had state instructions with, which is saying, no, no, he's got to be in good faith to be in scope of his employment. And so they had these two conflicting things back there that again, going back to the that's my time. I don't want to go ahead. Finish your thought going back to the verdict form. I think there, they probably were confused in the back, even though they had the instructions, the instructions were directly contradictory to one another. And we argued this to the judge as well. Um, it was the way it was pled made for confusing instructions. And I think the jury, um, was confused and wound up finding outside of any of it. Again, if all you have to believe is the plaintiff's version of events to show that he's outside the scope of his employment. And, and so the jury's verdict saying that he was inside is contrary to the evidence. Thank you. Thank you. Um, Mr. Blackmore, Blake more. I'm sorry. He pleads the court for the plaintiff and appellee Chad Osterhout. Um, this case has been, uh, heavily litigated, um, including a prior appeal, um, before this court on the issue of qualified immunity. Uh, the court previously found that it would have been obvious, uh, to Morgan that it was unconstitutional for him to use violent force on Mr. Osterhout when he was not resisting arrest, not attempting to flee. And there was no objective reason to believe that he And the same evidence that we, um, uh, relied upon in responding to the, uh, motion for summary judgment qualified immunity and presented to the court during that prior appeal was presented at the trial. Uh, plus additional evidence. Uh, the evidence in this case is the district court correctly found was very strong as to liability. Uh, it was diverse. Um, and, um, clearly the jury agreed with that and found that the we established our case at trial. Um, there are a number of issues that have been raised in this appeal. I'm not sure which, uh, which issues the it's been briefed. Um, one of the start by telling us which ones you think are most important. Okay. I, it was a little bit difficult for me, um, to, uh, to write the response because I do feel like there are a number of issues as I state in the response brief that were not adequately, that were not adequately raised that I think were forfeited or waived. I think it's a I think it's a, uh, an issue that still has not been decided by the court. Why don't we talk about Mr Gibbs initial argument related to the one line on the verdict form? Why? Why isn't that a problem? I mean, given the nature of this case, given this different standards approved, given the different, I mean, constructs that were at play here, why would that not have created an issue for purposes of disaggregating, um, responsibility because it, it is an indivisible injury. One is the district court correctly found. And secondly, the standards under Oklahoma law and, uh, the fourth amendment under the Morales case, which is the leading case under Oklahoma law, the support that's been created of negligent use of excessive force. It's derived from the fourth amendment. It's derived from Graham versus Connor. It's a virtually identical, um, analysis and beyond. But this is not a situation where there's a Manel claim. So it's not a question that it automatically, you know, that you've got this injury as a result of fourth amendment excessive force. And therefore, uh, the, the, you can make the claim that the municipality or the board is, is, is liable for a constitutional violation. This is, it's a whole different standard, a set of standards. Is it not in determining the liability of the, of the board, right? It's actually an easier standard because it's in, under Oklahoma law and under the governmental tort claims act, it's vicarious liability. If we'd brought a Monell claim, we would have to prove the existence of a policy or custom that caused the underlying constitutional violation. In this case, when we had to prove is that there was excessive, unreasonable use of force again, virtually the exact same analysis that you would do under, uh, Graham versus Connor and that he was acting within the scope of his employment. And if so, then the, uh, uh, then the BOCC is live for the, for the go. I'm sorry. I'm sorry. I didn't mean to interrupt you, Mr. Blakemore, but there has to be not only action within the scope of employment, but also has to be, uh, uh, committed in good faith, right? Yes. Well, those are intertwined. So how do you respond to the defendant's arguments that in this case, your theory in the evidence that you presented in support of that theory was, was binary. Either he said, you, you know, you hippie expletive, you know, you, or, or he didn't do that. And, and, and, uh, in the plaintiff is lying, but there, that there was no room for a jury to say, okay, well, Mr. Morgan violated section 1983, but Mr. Gibbs client also incurs liability or no, Mr. Morgan is Mr. Gibbs, but, uh, incurred, you know, did this. And so it was excessive force under Graham versus Connor and Mr. Cars in the board will incur liability because it w it, you could find that he, he, in good faith, um, you know, acted within the scope of his employment. It seems difficult, you know, to, to reconcile these competing theories that, you know, that Mr. Austen is lying and he's telling the truth and to leave for this third, uh, area for this third potential finding. Well, I think under the, um, uh, under Oklahoma law, and I think it's the gallons case specifically references that, um, reckless disregard is not necessarily, uh, inconsistent with the finding of, um, acting within the scope of employment and does not bad faith. And one of the cases that, um, we cite extensively was actually, um, a 10th circuit case, uh, 2017 Barnes versus United States, um, where the court, uh, uh, the court found that, um, it was a federal agent who was actually acting to set up, um, the plaintiff in that case on a drug charge, which, uh, what I would argue is even, um, if you're going to argue about potential malice, that would be even, even more so. But in the context of, of law enforcement, um, and whether you're acting under the, the scope of, uh, employment, the courts, the court said public policy concerns generally make it appropriate to hold the law enforcement agency responsible for an officer's acts, um, and that police agencies are expected to strictly control misbehavior by their own officers. Thus, the courts in Oklahoma and Florida have said that an officer may have in mind a governmental purpose when he abuses a prisoner, uses excessive force in a false arrest or assaults, uh, nightclub patrons. So, uh, it's clear in this case that Mr. Morgan was acting as the undersheriff of LeFlore County. They pursued, uh, Mr. Osterhout acting in their capacity as, uh, as, uh, employees of law enforcement officers. And we don't know, and we have no way of knowing what was in, uh, what was in Mr. Morgan's head when he used the, uh, excessive force on, on my client. And that's, uh, inherently an issue of fact. The court, the jury was properly instructed on, um, scope of employment and that, um, it may be found even in the instances of, uh, reckless disregard. Um, he was acting, he was acting as law enforcement officer. He was acting on behalf of, um, the agency. Um, and, uh, I don't think that it, it's not reversible error. Um, and, uh, you could easily say that, uh, the jury properly found that this was reckless disregard, which is not necessarily inconsistent with, um, uh, good faith. What do you do with the alleged improper comments by counsel in violation, allegedly, of the motion in limine that was in place? And given the, the size of the jury award, uh, presumably one could argue that that suggests the level of, uh, incitement based upon those comments. And so, uh, what is your response to that? Um, we set this out, um, in detail and in the brief, um, the initial question that was asked by Mr Small and of Mr Morgan, uh, was whether when he resigned, he was under investigation by the sheriff's office. Um, the court allowed over over Mr Gibbs. I believe objection allowed him to answer that Um, so the evidence that actually came in, um, was that he wasn't under investigation. Um, I thought the references were to O. S. B. I. S. Investigation and there was never, there was never any. And actually the district court references this, that there was never any Um, that, uh, there was a, uh, any comment about O. S. B. I. And that O. S. B. I. Was never uttered O. S. B. I. F. B. I. Was never uttered before the jury, uh, by anyone from the plaintiff. Um, and when he did, when Mr Small and did ask about, uh, uh, two specific instances, there was an objection that was sustained. It wasn't, those questions were not, uh, were not answered. The other, the other instance is where Mr Tim's, who was the other deputy involved in this, this incident, uh, Mr Small and did, uh, he did ask him about, uh, and it was what he believed to be excessive force by Morgan and other similar injuries. And that was not objected to that, that, that, uh, that evidence came in, that testimony came in without objection. As I stayed in the brief, there's been no assertion of, uh, of clear error on the basis of that. And the reference that, uh, Mr Small and made to other instances of excessive force during the, um, the closing argument was a reference back to Mr Tim's testimony that came in without objection. So I don't, especially in light of the, uh, the strength of the evidence, um, there was not, uh, you could not find, I don't think you could reasonably find that these isolated comments, um, and some, some evidence that came in without objection. So, I mean, that's not even on the table, but these, uh, the one question that was asked about the sheriff's investigation and then two specific questions about, uh, other instances where there was no testimony on it. Um, it's just not reasonable to find that that had any impact on the, on the jury's decision. Um, can I ask you a  Um, according to the board's claims, you've made some, some assertions of waiver for them not filing, uh, the proper motions after the close of evidence and after the entry of judgment. I thought I heard Mr Carr say that he had done that. Can you respond to that? Well, I think he So no, he, he did not file any post, uh, judgment motion. And so it's our position that in not filing any post judgment motion that, um, that any argument that he makes that the BOCC makes with respect to the, uh, sufficiency of the evidence, um, including the rulings at summary judgment, that those have been, that those have been waived. And I think this really, would this is a question of whether the evidence is found supports a finding of, of, of malice. Uh, in other words, going towards the question of whether it was within scope of employment. I mean, would that not have been something that would have been preserved by virtue of the summary judgment briefing? I don't, I don't think so. I think it does go to the sufficiency of the evidence. I think he's arguing it both ways. I think he's trying to have it both ways. In other nothing wrong with, um, with Mr, uh, Morgan's conduct, but, um, if you do find, if you do happen to find that there, that he was, uh, uh, that the force was excessive, um, well, then in that case, he's acting outside the scope of his employment. I mean, it comes down to whether or not one way or the other, either our evidence was insufficient to establish a violation, a constitutional violation or a tort violation, or, uh, our evidence was insufficient to establish that he was acting within the scope of employment. It's, it's a sort of a circular argument, but I think either way it's raising inherent fact issues that are, uh, uh, that are issues for the jury. And it's about the sufficiency of the evidence. And so on the waiver point, it's your position that because there wasn't a 50 B that, that argument is way. Yes, that's our first argument. Yes. Okay. And I'm out of time. Anything else? Anything? All right. The case is submitted. Uh, the court will be in recess.